OPINION
Appellant, William Stevenson, brings this pro se
appeal from a judgment of the Court of Common Pleas of Allen County, Domestic Relations Division, wherein he complains that the final entry of divorce contains an erroneous property division and spousal support order. For the reasons set forth below, we affirm the judgment in part and reverse in part.
The record in this case demonstrates that Appellant and Appellee, Lyn Ette Stevenson, were married in June 1969. Three children, all of whom are now emancipated, were born as issue of the marriage. By the 1990's, the marital relationship had become increasingly tumultuous, evidenced by the fact that the parties instituted divorce proceedings and later reconciled on five different occasions throughout that time.
Notwithstanding the prior reconciliations, on April 30, 1999, Appellant filed another complaint for divorce alleging grounds of neglect; incompatibility; extreme cruelty and adultery. Appellee answered the complaint, admitted incompatibility, and requested the court to order temporary spousal support during the pendency of the action. The court subsequently issued a temporary support order, requiring Appellant to pay $1,198 per month until September 1, 1999, when the amount would increase to $1,448 per month.
The matter then proceeded to a final divorce hearing. After considering the evidence presented, the trial court issued a decision finding, among other things, that Appellee was entitled to $1,400 per month in spousal support for a period of ninety months. In addition, the court made several findings regarding the division of the parties' marital property, some of which were based upon the conclusion that Appellant had engaged in financial misconduct. Thereafter, prior to the preparation of the final judgment entry, Appellant moved to withdraw his complaint, alleging that the parties had again reconciled. The court summarily denied the motion and issued the final entry on October 28, 1999. Appellant then filed this timely appeal, asserting numerous assignments of error, which we have elected to address outside of their original order.
II.
 The trial court erred in finding the value of the Lester Avenue real estate of the parties to be only $76,000.
 It is well established that a trial court exercises broad discretion in assigning value to marital property. Berish v. Berish (1982), 69 Ohio St.2d 318, 319; Willis v. Willis (1984), 19 Ohio App.3d 45, 48. Appellee presented expert testimony from Ralph Haggard, an experienced real estate agent, who appraised the marital home at $76,000. This figure was based upon the local market, prior sales in the area and the general "below average condition" of the subject property, specifically, the lack of a central heating system and a deteriorated garage roof. In addition to the testimony presented by the wife, Appellant testified that he also had the home appraised and that the realtor suggested a figure of $75,000.
Appellant now complains that the trial court should have found the home to be worth much more since it is larger and in better condition than many of the surrounding properties. We are not convinced. There was credible evidence before the court was that the home was worth between $75,000 and $76,000. Therefore, we cannot say that the trial court abused its discretion herein.
Appellant's second assignment of error is overruled.
III.
 The trial court erred in finding that Plaintiff/Appellant [was] guilty of financial misconduct.
 The record reveals that in March 1998, during a time when Appellee was living outside the marital residence, Appellant assisted his daughter in purchasing a piece of property located on Slabtown Road in Lima, Ohio, for use in a day-care business venture. Appellant co-signed on the loan and eventually borrowed approximately $25,000 from his 401(k) fund, referred to as the TESPHE account, without consulting or informing his spouse. Moreover, despite the fact that the parties were still married, Appellant signed all necessary loan and/or ownership documents as an unmarried man. Appellee first learned of the transaction in September 1998 when the parties' daughter defaulted on the loan and Appellant assumed responsibility of more than $100,000 in debt. Appellee stated that until that point, she was under the impression that the property had merely been leased.
Based upon this evidence, the trial court found Appellant guilty of financial misconduct. At the same time, however, the trial court refused to impose any of the sanctions outlined in R.C. 3105.171(E)(3), which permits a court to "compensate the offended spouse with a distributive award or with a greater award of marital property." While Appellant was not specifically penalized, his actions clearly contributed to the manner in which the court equitably divided the marital estate, i.e. Appellant was awarded the Slabtown property and was ordered to assume all associated debts.
Appellant now argues that the court erred in finding him guilty of financial misconduct because Appellee had full knowledge of the transaction and because she decided to abandon the marital home, thus, any lack of information should be considered her fault. This argument is not well-taken.
R.C. 3105.171(E)(3) provides that financial misconduct includes, but is not limited to, "the dissipation, destruction, concealment, or fraudulent disposition of assets * * *." While this list is not exhaustive, all of the above acts contain an element of wrongful scienter, typically evidenced by an attempt to profit from the misconduct or willfully interfere with the other spouse's distribution of marital assets. Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268, unreported.
Admittedly, conflicting evidence exists as to whether Appellant purposely secured this expensive property as an unmarried man and borrowed against his retirement fund without Appellee's knowledge. When faced with such evidence, the trier of fact is charged with the duty of determining the credibility of the testimony. Jamesv. James (1995), 101 Ohio App.3d 668, 689. Once the trial court makes this determination, we may not then substitute our judgment in its stead. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. Thus, because the trial court was presented with credible evidence of Appellant's misconduct, we must conclude that the court did not err in its finding.
Appellant's third assignment of error is overruled.
IV.
 The trial court erred in finding the Defendant/Appellee to have no equitable interest in the 1996 Honda Motor Vehicle.
 Although Appellee was awarded a 1996 Honda vehicle, the trial court concluded that she would be credited as receiving zero marital equity due to the finding that the debt is "roughly equal [to] or greater than the value of the vehicle." At the time of the hearing, Appellant stated that value of the vehicle was approximately $7,400. Both parties also testified that the monthly payments on the debt equal $371. Appellee stated that she had between twenty-four and thirty payments left on the note. In addition, Appellant testified that the debt would "probably" be paid off in about two years. Thus, the evidence before the court established that the debt was between $8,904 and $11,130.
Appellant now complains that the trial court erred in finding no equitable value in the vehicle because there are really only fifteen more months left on the debt. Because the record is void of any evidence tending to prove this latest contention, Appellant's fourth assignment of error is overruled.
V.
 The trial court erred in finding the value of the 1993 Thunderbird motor vehicle of the parties to be $6,950.
 As we have already stated, a trial court enjoys wide discretion in determining the value of marital property. See James v. James (1995), 101 Ohio App.3d 668, 681. This discretion, however, is not without limits. Id. A careful review of the transcript reveals that the only evidence regarding the value of a 1993 Ford Thunderbird was that, in good condition, the vehicle was worth approximately $6,150. Notwithstanding, the trial court's decision reflects a value of $6,950. Since the evidence wholly fails to support this figure, we agree with Appellant's argument and find that the trial court erred in this instance.
Appellant's fifth assignment of error is sustained.
I.
 The trial court erred in computing the equal division of the marital estate by allowing the Plaintiff/Appellant $116,848 and the Defendant/Appellee $142,064.
 R.C. 3105.171 governs the trial court's authority to divide a marital estate upon granting the parties a divorce. R.C. 3105.171(C)(1) provides the following:
 * * * [T]he division of marital property shall be equal. If an equal division would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 R.C. 3105.171(F)(1) through (9) sets forth several factors, including the duration of the marriage; the assets and liability of the spouses; the liquidity of the property; and any other factors the court may find relevant.
A trial court enjoys broad discretion in fashioning such a property division. Berish v. Berish (1982), 69 Ohio St.2d 318. There is no one set of rules to follow when dividing marital property. Cherry v. Cherry (1981), 66 Ohio St.2d 348. "The division of property does not necessarily need to be equal to be equitable." Shaffer v. Shaffer (1996), 109 Ohio App.3d 205, 213. What a court finds to be equitable is dependent upon the facts of each case. Briganti v. Briganti (1984), 9 Ohio St.3d 220. Thus, in reviewing a property division, this court is limited to a determination of whether the trial court abused its discretion.Martin v. Martin (1985), 18 Ohio St.3d 292.
Appellant claims that the property division in this case was inequitable because, while Appellee was credited with $142,064 of marital equity, Appellant was only awarded $116,848.54. Our review of the record, however, reveals that Appellant has chosen to overlook the fact that the trial court awarded him equity in the amount of $25,215, which represents the debt that must be repaid to the TESPHE account. The court considered the debt to be an asset, presumably because all monies repaid to the account will be reinvested in Appellant's 401(k) fund. When adding this figure to the equation, Appellant's total award equals approximately $142,063.54. This is essentially equal to the wife's award. Therefore, in using these figures, we conclude that the trial court did not issue an erroneous property division.
However, we must point out our previous finding that the trial court incorrectly valued Appellant's 1993 Ford Thunderbird at $6,950. Given the fact that we have remanded the matter to allow the trial court to revalue the vehicle, it follows that the court should then revisit the issue of the total property division to consider if any adjustment is necessary, in accordance with the aforementioned statutes and case law.
Based upon the foregoing, Appellant's first assignment of error is sustained only insofar as it provides the trial court with the opportunity to re-examine the property division by using the appropriate figures.
Since Appellant's sixth, seventh and eighth assignments of error raise similar issues, we have elected to discuss them together.
VI.
 The trial court erred in finding the parties to be the owners of the 1975 Superior Motor Home, and further that the value of the 1975 Superior Motor Home would be $8,000.
 VII.
 The trial court erred in finding the Cobra Motor Home to be the property of the parties, and further erred in finding that the value of the 1974 Cobra Motor Home to be [sic] $4,000.
 VIII.
 The trial court erred in finding the Econoline Van to be the property of the parties, and further erred in finding that it had a value of $1,000.
 Appellant initially argues that the trial court erred in determining that two motor homes and a van were "marital property" under R.C. 3105.171 since he no longer owns the vehicles and transferred them prior to filing the instant complaint for divorce. R.C. 3105.171(B) states the following:
 In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * [U]pon making such a determination, the court shall divide the marital * * * property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.
 A trial court has wide discretion in resolving what constitutes marital property. See Leathem v. Leathem (1994), 94 Ohio App.3d 470, 472; Krisher v. Krisher (1992), 82 Ohio App.3d 159. On appeal, such a decision is not subject to reversal in the absence of an abuse of discretion. Leathem, 94 Ohio App.3d at 472-473. An abuse of discretion implies that the trial court engaged in unreasonable, arbitrary or unconscionable decision-making. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Appellant's testimony demonstrates that prior to the instant proceedings, he sold a 1975 Superior Motor Home, a 1974 Cobra Motor Home and a 1986 Ford Econoline Van specifically in order to avoid having them included in a future divorce settlement. Appellant stated that he sold the Superior for $500; the Cobra for $50; and the Ford van for $10. Each vehicle was transferred to a relative and/or friend.
After consideration of this evidence, the trial court determined that the vehicles in question were marital property, and ordered that Appellant receive credit in marital equity for their respective values. Based upon the Appellant's own testimony, we find that the trial court did not abuse its discretion in deeming these three vehicles marital property.
Appellant next claims that even if the vehicles could properly be considered marital property, the trial court erred in assigning values to them higher than the prices at which they were sold. Appellant testified that the vehicles were all in dire need of repair and that they were not worth much money at the time he transferred them. Appellee, on the other hand, stated that in her opinion, the Superior Motor Home was worth $8,000 due to the fact that it was in "excellent condition". Appellee also testified that she thought the Cobra Motor Home was worth approximately $4,000 and the van should be valued at $1,000. The trial court ultimately agreed with Appellee's opinions.
Appellant essentially argues that the trial court erred because Appellee failed to present any expert testimony as to the value of these three vehicles. In general, a witness must be qualified as an expert before testifying as to his or her opinion on the value of property. Tokles Son, Inc. v. Midwestern (1992), 65 Ohio St.3d 621, paragraph one of the syllabus. However, an exception to this rule exists to permit an owner to testify as to the value of his or her property without being qualified as an expert. Id.
at paragraph two of the syllabus. This exception is premised on the notion that an owner is familiar with the property from having purchased or dealt with it. Id. Thus, since the wife was familiar with this marital property, the trial court was not precluded from adopting her opinion as to the value of the vehicles.
For these reasons, Appellant's sixth, seventh and eighth assignments of error are overruled.
IX.
 The trial court erred in finding that the $25,215 bad debt was not a marital debt of the parties.
 Herein, Appellant claims that the trial court erred in ordering him to assume the $25,215 TESPHE debt from the Slabtown Road property venture. Appellant specifically argues that since Appellee knew about the plan to assist the parties' daughter, the debt should have been considered marital.
The classification of the debt was based upon the trial court's finding that Appellant engaged in financial misconduct by securing this costly property without first informing or consulting with his wife. As we have already stated, the trial court did not abuse its discretion in making such a determination. Thus, Appellant's ninth assignment of error is not well-taken and must be overruled.
X.
 The trial court erred in finding that the Defendant/Appellee receive [sic] 94.21% of the TESPHE account to equalize the division of the marital property of the parties.
 Although the argument associated with this assignment of error is confusing at best, we discern from the briefs submitted to this court that Appellant takes issue with the fact that in dividing the TESPHE account between the spouses, the trial court granted Appellee approximately 94 percent of the plan, including any increase in value from the monthly payments Appellant makes on the $25,215 loan. We are perplexed by this assertion and find it without merit since the record indicates that the court divided the plan without regard to the debt. Furthermore, the written decision clearly awards Appellant all interest in the debt.
Appellant's tenth assignment of error is overruled.
XI.
 The trial court erred in finding that the VISA accounts of the Defendant/Appellee were the responsibility of the Plaintiff/Appellant.
 Despite the phrasing of Appellant's eleventh assignment of error, the brief reveals that the argument actually has little to do with the trial court's specific decision to order each party responsible for the repayment of a $6,000 credit card debt. Rather, Appellant makes a general claim that if the court split the credit card debt, it was unfair not to divide the approximately $25,000 debt incurred on the TESPHE account. However, the decision not to divide responsibility as to the TESPHE debt was based upon the finding that Appellant engaged in financial misconduct by borrowing against his pension plan without first informing or consulting with Appellee. We have repeatedly stated that the trial court did not err in making this determination, thus, Appellant's eleventh assignment of error is overruled.
Because Appellant's twelfth, thirteenth and fourteenth assignments of error present similar issues for our review, we have elected to address the arguments contained therein together.
XII.
 The trial court erred in finding that spousal support should be awarded in the amount of $1,400 per month.
XIII.
 The trial court erred in finding that the Plaintiff/Appellant is in good physical condition.
XIV.
 The trial court erred in finding that the Plaintiff/Appellant should be required to pay spousal support for 90 months.
 R.C. 3105.18 governs an award of spousal support. Upon request, a trial court may order either spouse to pay a reasonable amount of support to the other spouse. R.C. 3105.18(B). The statute further provides as follows:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support * * *, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training or job experience and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
 The application of these factors, together with a consideration of the particular circumstances of each case, provides a trial court with broad discretion to determine the amount and duration of any spousal support award. See generally, Shaffer v. Shaffer (1996), 109 Ohio App.3d 205. Thus, unless we find that the trial court abused that discretion by rendering an arbitrary, unreasonable, or unconscionable spousal support award, we are bound to affirm the decision. See generally, Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 24; Shaffer v. Shaffer (1996), 109 Ohio App.3d 205, 209-210.
The written decision issued in this matter clearly indicates that the trial judge considered each of the applicable factors enumerated in R.C. 3105.18(C)(1). For instance, the court took into account the fact that the parties had been married for thirty years; that Appellee stayed at home to care for the parties' children during their youth; and that Appellant currently earns a salary of approximately $72,000 per year, while Appellee earns roughly $45 per week as a cleaning lady. Additionally, the court found that the parties enjoyed a relatively good standard of living throughout the marital relationship, and that Appellant will be able to obtain additional retirement benefits in the future as opposed to Appellee's limited ability to do so.
The court also found that the parties were in relatively good physical condition, save for the stress caused by the instant proceedings. Appellant specifically contends that the trial court erred in making this finding since he testified that he was diagnosed with pneumonia twice in 1999. In addition, Appellant explained that a physician advised him to quit his job at Ford Motor Company approximately fifteen years ago because of an allergy to a coolant that is frequently handled.
While it is true that Appellant's testimony was unrefuted, the weight to be given a witness' testimony is an issue of credibility and is a matter left solely to the trier of fact. Simoni v.Simoni (1995), 102 Ohio App.3d 628, 634. The trial court obviously did not find this evidence credible, presumably because Appellant has continued a seven day a week, ten hour day employment schedule at Ford for the past several years. This court is in no position to second-guess the trial court on this matter.
In considering the totality of the circumstances in the casesub judice, specifically the length of the marriage and the large disparity in the parties' incomes, we conclude that the court issued a reasonable spousal support order in both amount and duration. Accordingly, Appellant's twelfth, thirteenth and fourteenth assignments of error are overruled.
XV.
 The trial court erred in finding that the cohabitation of the Defendant/Appellee with an unrelated adult substantially contributing toward her support [sic].
 The trial court ordered spousal support to terminate upon "[Appellee's] cohabitation with an unrelated adult male who contributes substantially to her support." Appellant argues that the court erred in placing a limitation on the circumstances in which spousal support could be terminated. In particular, Appellant claims that spousal support should automatically terminate upon evidence of cohabitation with anyone, regardless of gender and regardless of whether that individual substantially contributes to Appellee's support. We disagree.
We initially point out that a trial court is not required to reserve jurisdiction to terminate spousal support upon a finding of cohabitation. Jordan v. Jordan (1996), 117 Ohio App.3d 47. Contrary to Appellant's suggestions, "cohabitation" entails more than a simple roommate relationship; this is true even if the roommates are found to be having sexual relations. In reDissolution of Marriage of Briggs (1998), 129 Ohio App.3d 346,349. The term "cohabitation", when used in this particular context, is a substitute for "remarriage" in that it implies that financial support is being provided for or by the new partner.Id. "Without a showing of financial support, merely living with an unrelated member of the opposite sex is insufficient, in and of itself, to require termination of spousal support." Id. Thus, based upon the foregoing, we hold that the trial court did not err by so defining the circumstances upon which spousal support could terminate through cohabitation.
Appellant's fifteenth assignment of error is overruled.
XVI.
 The trial court erred in not specifically calculating the arrearage in spousal support for the benefit of the parties and the support enforcement agency.
 In his final assignment of error, Appellant essentially argues that the trial court erred in failing to credit his spousal support arrearage by approximately $742. This amount represents a "double payment" that Appellant apparently made on the wife's automobile debt during the pendency of the action.
In resolution of this matter, we point to R.C. 2301.06(A), which provides:
 Any payment of money by the person responsible for the support payments under a support order to the person entitled to receive the support payments that is not made to the division [of child support in the department of human services] in accordance with the applicable support order shall not be considered as a payment of support and, unless the payment is made to discharge an obligation other than support, shall be deemed to be a gift.
 R.C. 2301.34(B) defines a "support order" as "an order requiring payment of support issued pursuant to section * * * 3105.18 * * * of the Revised Code." R.C. 3105.18(B) provides for the issuance of a temporary spousal support order.
In this case, the July 30, 1999 judgment entry granting temporary spousal support specifically orders that it "shall be payable through the Allen County Child Support Enforcement Agency * * *." Contrary to the court's clear directive, Appellant failed to make any payments through the appropriate child support agency. Thus, the trial court did not err in refusing to grant a credit of $742 on the existing spousal support arrearage.
Appellant's sixteenth assignment of error is overruled.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is reversed as to the valuation of the 1993 Ford Thunderbird and how that relates to the overall property division. Consequently, the matter is remanded for further proceedings consistent with this opinion. The remainder of the judgment is hereby affirmed.
Judgment reversed in part, affirmed in part andcause remanded for further proceeding.
 ______________________________ WALTERS, PRESIDING JUDGE
 BRYANT and SHAW, JJ., concur.