DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} This appeal involves a claim by a former spouse that the trial court improperly terminated her spousal support based on a finding that she had cohabited with another man within the meaning of the parties' separation agreement. The former spouse has asserted that the trial court's finding of cohabitation was not supported by the evidence and that the trial court improperly considered evidence of her pre-divorce relationship with the man. This Court affirms because the trial court's decision was supported by the evidence, all of which was properly before it.
 FACTS {¶ 2} On March 7, 2006, the Lorain County Common Pleas Court, Domestic Relations Division, granted a divorce to Thomas and Barbara Jenkins after twenty years of marriage. As part of the parties' separation agreement that was incorporated into the divorce decree, Thomas *Page 2 
agreed to pay Barbara spousal support for fifty-four months or until the death of either party, Barbara's remarriage, or her "cohabitation with an unrelated male in a relationship tantamount to marriage."
 {¶ 3} Approximately one year later, Thomas moved the trial court to terminate spousal support, contending that Barbara's spousal support should be terminated under the cohabitation clause of the parties' separation agreement. Specifically, Thomas asserted that Barbara was living with a man named Timothy McGannon in a relationship that was tantamount to marriage. After holding a hearing on the motion, the trial court found that Barbara had violated the cohabitation clause by living with McGannon for an extended period of time in a romantic relationship in which they divided their living expenses equally. Consequently, the trial court found that Barbara was no longer entitled to receive spousal support and terminated the spousal support order. Barbara has timely appealed and raised two assignments of error.
 COHABITATION {¶ 4} Barbara's first assignment of error is that the trial court incorrectly found that she had cohabited "with an unrelated male in a relationship tantamount to marriage." Barbara has maintained that the trial court made a legal error, triggering a de novo standard of review, while Thomas has asserted that this Court should review for an abuse of discretion. In fact, both parties have misstated the appropriate standard of review.
 {¶ 5} The question of whether cohabitation exists is a question of fact to be determined on a case-by-case basis. Dial v. Dial,92 Ohio App. 3d 513, 514 (1993). "This court will not reverse the lower court's determination if it is supported by some competent, credible evidence," nor will this Court substitute its judgment for that of the trial court.Schrader v. Schrader, *Page 3 
9th Dist. No. 2664-M, 1998 WL 46757 at *8 (Jan. 21, 1998); but seeHuntington Nat'I Bank v. Chapell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, at ¶ 17-75 (Dickinson, J., concurring).
 {¶ 6} "`Cohabitation,' when used in a divorce decree as a condition for termination of spousal support, is used as a substitute for `remarriage.'" Gatto v. Gatto, 9th Dist. No. 17121, 1995 WL 434403 at *1 (July 19, 1995). The condition is used to preclude an ex-spouse from eluding termination of spousal support as a consequence of remarriage, while obtaining the financial benefits of remarriage. See Taylor v.Taylor (1983), 11 Ohio App. 3d 279, 280 (1983).
 {¶ 7} "Cohabitation" is a term describing a lifestyle, not simply a housing arrangement. Dickerson v. Dickerson, 87 Ohio App. 3d 848, 850
(1993). The determinative issue is whether the cohabitant has "assumed obligations equivalent to those arising from a ceremonial marriage."Taylor, 11 Ohio App. 3d at 280. The Sixth District Court of Appeals identified three factors that courts should look for: "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses."Moell v. Moell, 98 Ohio App. 3d 748, 752 (1994) (quotingDickerson, 87 Ohio App. 3d at 850, n. 2). Without a showing of financial support, merely living with an unrelated member of the opposite sex is insufficient to permit termination or denial of spousal support.Thomas v. Thomas, 76 Ohio App.3d 482, 485 (1991). "While not necessary to a finding of cohabitation, the existence of [a sexual] relationship would be strong evidence in support of it." Schrader, 1998 WL 46757 at *8.
 {¶ 8} The evidence before the trial court demonstrated that Barbara began a romantic relationship with an unrelated man named Timothy McGannon a few months before she filed a complaint for divorce from Thomas. McGannon was also in the process of ending his marriage. During June 2004, the same month that Barbara filed for divorce, Barbara and McGannon moved into an apartment together. While living in the apartment, McGannon looked for a home to *Page 4 
purchase, with the intention that Barbara and her children would eventually move in with him. He took Barbara and her children with him to look at the home that he eventually purchased because he wanted their input. McGannon purchased the home on Deer Crossing in Sheffield Village. At the time of the divorce of Barbara and Thomas, Barbara was living alone in an apartment and McGannon lived in the Deer Crossing home.
 {¶ 9} Shortly after the divorce became final on March 7, 2006, however, Barbara moved into the Deer Crossing home with McGannon, as they had planned. Barbara lived with him there for approximately fifteen months. When Barbara moved in, she brought some of her own furniture and many of her possessions. Barbara's four children also later moved in and resided there as well.
 {¶ 10} Barbara and McGannon had made arrangements for dividing their living expenses. McGannon paid the mortgage, property taxes, and homeowner's insurance; and he included phones for Barbara and each of her four children on his cell phone plan. Barbara's financial responsibilities included paying for groceries, the utility bills, and to have the lawn mowed. Barbara also prepared all the meals, did the laundry, and cleaned the house. Initially, McGannon paid more than half of their living expenses because Barbara could not afford to contribute more. A few months later, Barbara began receiving her spousal support of $6,000 per month, and she was able to contribute more to the living expenses. According to Barbara's testimony, she and McGannon each paid about half of the household living expenses.
 {¶ 11} While living in the Deer Crossing home, Barbara and McGannon had a romantic and sexual relationship. They shared the master bedroom in the home, they exchanged gifts and socialized together, and they sometimes took vacations together. They held themselves out as a romantically-involved couple to Barbara's children and others. Three Sheffield Village Police *Page 5 
officers testified about responding to two domestic disturbances and a reported theft at the Deer Crossing home. Each officer testified that Barbara and McGannon had represented themselves to them as "boyfriend and girlfriend."
 {¶ 12} Although Barbara and McGannon were no longer living together by the time of the hearing, the evidence was not disputed that they had resided together in the Deer Crossing home for well over a year after Barbara's divorce became final. While living there, Barbara and McGannon had shared living expenses and had a romantic and sexual relationship. There was competent, credible evidence to support the trial court's finding that Barbara had cohabited with an unrelated male in a relationship that was tantamount to marriage. Therefore, Barbara has failed to establish that the trial court incorrectly concluded that spousal support should be terminated under the cohabitation clause in the parties' separation agreement. Barbara's first assignment of error is overruled.
 EVIDENCE OF PRIOR RELATIONSHIP {¶ 13} At the hearing on the motion to terminate spousal support, the trial court allowed Thomas to present evidence about Barbara's relationship with McGannon prior to March 7, 2006, the date the couple's divorce became final and terms of the separation agreement became effective. Barbara's second assignment of error is that the trial court incorrectly considered evidence of her pre-divorce relationship with McGannon.
 {¶ 14} Although Barbara has maintained that the trial court incorrectly considered this evidence, she has failed to develop a supporting legal argument, except to maintain that the separation agreement did not apply retroactively. Essentially, she has asserted that any evidence that she had a relationship with McGannon prior to March 7, 2006, was not relevant to whether she cohabited with him afterward. *Page 6 
 {¶ 15} "Relevant evidence" is defined in Rule 401 of the Ohio Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although evidence about Barbara's relationship with McGannon before the divorce had no bearing on whether she lived with him after the divorce, it did tend to demonstrate the depth and long-term nature of their relationship. Whether the post-divorce living arrangement between Barbara and McGannon was one that was "tantamount to marriage" required the court to consider evidence about the nature of their relationship. Thomas was required to establish that Barbara's post-divorce living arrangement with McGannon was one of sustained duration and evidence of her prior relationship with him was relevant to that determination, particularly the evidence that Barbara had an ongoing romantic relationship with McGannon for more than two years before her divorce and that she helped him select a home to purchase with the intention that they would later reside there together.
 {¶ 16} Barbara has failed to demonstrate that the trial court should have limited its consideration of whether her later cohabitation with McGannon was part of a relationship that was "tantamount to marriage" to evidence of her post-divorce relationship with him. The second assignment of error is overruled.
 CONCLUSION {¶ 17} The assignments of error are overruled. The judgment of the Lorain County Common Pleas Court, Domestic Relations Division, is affirmed.
 Judgment affirmed. *Page 7 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 WHITMORE, J. MOORE, P. J. CONCUR *Page 1