[Cite as *Guggenbiller v. Guggenbiller*, 2011-Ohio-3622.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

LEE SCOTT GUGGENBILLER

    Appellee

    v.

CAROL ANN GUGGENBILLER

    Appellant

C.A. No.    10CA009871

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    07NU067291

DECISION AND JOURNAL ENTRY

Dated: July 25, 2011

DICKINSON, Judge.

INTRODUCTION

**{¶1}** Lee and Carol Guggenbiller divorced in September 2008 after 22 years of marriage. The trial court ordered Mr. Guggenbiller to pay Ms. Guggenbiller $1250 a month for 54 months as spousal support. The decree provided that Mr. Guggenbiller's support obligation would terminate sooner upon the death of either party or if Ms. Guggenbiller remarried or cohabitated with a person, other than Mr. Guggenbiller, in a relationship comparable to marriage. In May 2009, Mr. Guggenbiller moved to terminate his spousal support obligation, alleging that Ms. Guggenbiller was cohabiting with her boyfriend. Following a hearing, the trial court granted Mr. Guggenbiller's motion. Ms. Guggenbiller has appealed, assigning as error that Mr. Guggenbiller failed to demonstrate a substantial change in circumstances and that the trial court incorrectly determined that she was cohabiting with another person. We affirm because the trial

court did not have to determine whether there had been a substantial change in circumstances and because its cohabitation determination is supported by some competent, credible evidence.

## CHANGE IN CIRCUMSTANCES

{¶2} Ms. Guggenbiller's first assignment of error is that the trial court incorrectly terminated her spousal support because Mr. Guggenbiller failed to demonstrate that there had been a substantial change in circumstances since the time of their divorce. She has argued that she was already in a relationship with the same boyfriend at the time the trial court issued its decree and that her daily schedule has not changed significantly since that time.

{¶3} Ms. Guggenbiller's assignment of error is controlled by our decision in *Synovetz v. Synovetz*, 9th Dist. No. 95CA006197, 1996 WL 199443 (Apr. 24, 1996). In *Synovetz*, the trial court ordered Richard Synovetz to pay Loretta Dye $1000 per month for spousal support for five years unless either party died or she remarried or cohabitated with another person. Two years later, the trial court terminated Mr. Synovetz's support obligation after it found that Ms. Dye was cohabiting with another man. Ms. Dye appealed, arguing that the trial court lacked jurisdiction to terminate the support obligation because it did not find that there had been a "change of circumstances" under Section 3105.18(E) of the Ohio Revised Code. *Id*. at *1. In particular, she asserted that she had already been living with the other man at the time of the decree. We rejected her argument, noting that Mr. Synovetz had not moved to terminate his support obligation under Section 3105.18(E), but under the express language of the decree. *Id*.

{¶4} Our decision in *Synovetz* recognized the distinction courts have drawn between a motion to modify spousal support because of a change in circumstances under Section 3105.18(E) and a motion to terminate based on the occurrence of a condition subsequent specifically identified in the divorce decree. See *Barrows v. Barrows*, 9th Dist. No. 21904,

2004-Ohio-4878, at ¶5 (distinguishing between cases in which the termination of spousal support was based on a change in circumstances and those in which it was based on language in the decree that required termination upon a finding of cohabitation"); see also *Ressler v. Ressler*, 17 Ohio St. 3d 17, 18 (1985) (holding that trial court could not modify spousal support award based on change in circumstances even though the award was "subject to termination in the event of death, remarriage, or cohabitation[.]"). The difference between the two situations was explained by Judge Hendrickson in *Hibbard v. Hibbard*, 12th Dist. No. 88-06-078, 1988 WL 139129 at \*2 (Dec. 27, 1988) (Hendrickson, J., concurring). According to Judge Hendrickson, "[t]here is a distinction between modification of [spousal support], and termination upon the occurrence of a condition subsequent. Modification is an increase or decrease in the amount of alimony payable, or a change in the terms and conditions of payment. A condition subsequent is a future occurrence such as remarriage, death, or cohabitation which upon happening, accelerates the termination of the alimony award." *Id*.

{¶5} The remaining question is whether any of the Ohio Supreme Court's decisions since *Synovetz* have eliminated the distinction it drew between a termination of spousal support based on a change in circumstances and a termination based on a condition subsequent incorporated into the decree. In *Kimble v. Kimble*, 97 Ohio St. 3d 424, 2002-Ohio-6667, the Supreme Court held that, under Section 3105.18(E) of the Ohio Revised Code, "a trial court has the authority to modify or terminate an order for alimony or spousal support only if the divorce decree contains an express reservation of jurisdiction." *Id*. at syllabus. The decree at issue in that case did not contain any conditions subsequent and, in fact, "specifically provided that the court would not retain jurisdiction over the issue of spousal support." *Id*. at ¶1. Accordingly, it is distinguishable. In *Mandelbaum v. Mandelbaum*, 121 Ohio St. 3d 433, 2009-Ohio-1222, the

Supreme Court held that "[a] trial court lacks jurisdiction to modify a prior order of spousal support unless the decree of the court expressly reserved jurisdiction to make the modification and unless the court finds (1) that a substantial change in circumstances has occurred and (2) that the change was not contemplated at the time of the original decree." *Id.* at paragraph two of the syllabus; see R.C. 3105.18(E) ("[A] court that enters [a] decree of divorce . . . does not have jurisdiction to modify the amount or terms of the . . . spousal support unless the court determines that the circumstances of either party have changed[.]" Again, however, the decree at issue in *Mandelbaum* did not contain a provision that it would terminate upon the occurrence of an identified condition subsequent. Rather, it merely provided that it would "be subject to the ongoing and continuing jurisdiction of this Court" and that "[e]ither party shall have the right to apply to this Court for the purposes of modifying the spousal support, due to a change in the financial circumstances of either party." *Mandelbaum*, 2009-Ohio-1222, at ¶6. Accordingly, while the syllabus of *Mandelbaum* could appear, on its face, to apply to any change of an award of spousal support, because it did not involve a condition subsequent, we conclude that the Supreme Court's holding did not eliminate the distinction that has been drawn by courts between terminations of support based on a change in circumstances of the parties and those based on the occurrence of a specific condition subsequent. *Barrows v. Barrows*, 9th Dist. No. 21904, 2004-Ohio-4878, at ¶5; *Synovetz v. Synovetz*, 9th Dist. No. 95006197, 1996 WL 199443 at *1 (Apr. 24, 1996).

{¶6} Because Mr. Guggenbiller's motion to terminate spousal support was based on the occurrence of a condition subsequent expressly identified in the divorce decree, the trial court had jurisdiction to terminate his support obligation if it determined that Ms. Guggenbiller was

cohabiting with another person in a relationship that was comparable to marriage. Ms. Guggenbiller's first assignment of error is overruled.

COHABITATION

**{¶7}** Ms. Guggenbiller's second assignment of error is that the trial court incorrectly terminated Mr. Guggenbiller's spousal support obligation on the basis of cohabitation. She has argued that Mr. Guggenbiller failed to establish that she was cohabiting with her boyfriend.

**{¶8}** "'Cohabitation' is a term describing a lifestyle, not simply a housing arrangement." *Jenkins v. Jenkins*, 9th Dist. No. 08CA009324, 2009–Ohio–75, at ¶7 (quoting *Dickerson v. Dickerson*, 87 Ohio App. 3d 848, 850 (1993)). "The determinative issue is whether the cohabitant has 'assumed obligations equivalent to those arising from a ceremonial marriage.'" *Id.* (quoting *Taylor v. Taylor*, 11 Ohio App. 3d 279, 280 (1983)). "Courts typically look to three factors to determine whether a former spouse is cohabiting: '(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses.'" *Batcher v. Batcher*, 9th Dist. No. 25314, 2011-Ohio-1509, at ¶8 (quoting *Jenkins*, 2009–Ohio–75, at ¶7). "The question of whether cohabitation exists is a question of fact to be determined on a case-by-case basis." *Id.* "A reviewing court should not substitute its judgment for that of the fact-finder, but must uphold the finding if it is supported by 'some competent, credible evidence.'" *Id.* (quoting *Jenkins*, 2009-Ohio-75, at ¶5).

**{¶9}** Regarding the first two factors, Ms. Guggenbiller has argued that the evidence established that she has lived with her father, not her boyfriend, since the time of the divorce. She testified that she moved in with her father and his wife a couple of months before the decree was entered and has lived there ever since. She testified that she sleeps on a day bed in one of his bedrooms and keeps her clothes in a closet in that room. She testified that her driver's

license and vehicle registration identifies her father's address as her own and that she is also registered to vote at her father's address.

{¶10} Ms. Guggenbiller admitted that, after she gets up in the morning, she goes to her boyfriend's house. She explained that, because her father is prone to falling, she has to keep her dog at her boyfriend's house. She also explained that, because her boyfriend is a truck driver who leaves for work early in the morning, she has to go to his house after she gets up to take care of her dog.

{¶11} Ms. Guggenbiller testified that she goes to college full time and that she leaves for school from her boyfriend's house. After school, she returns to his house to take care of her dog, have dinner, and study. According to Ms. Guggenbiller, because her boyfriend works long hours, his house is a quiet place for her to study. She, therefore, set her computer up at his house and uses his internet service. She testified that she does not go back to her father's house until between 9:00 and 11:00 p.m.

{¶12} Ms. Guggenbiller testified that she sleeps at her boyfriend's house on weekends and that they have a sexual relationship. She testified that she also sometimes sleeps at his house during the week if they have attended a function together and were out late or if she was drinking. She also testified that, because of her dog, she sometimes sleeps at her boyfriend's house when he is out of town for work. She admitted that she stores a lot of her belongings in her boyfriend's garage and that her bed is in his bedroom. She admitted that she does laundry at her boyfriend's house and that she cleans his house. She also admitted that the only furnishing that she has at her father's house is a microwave oven and that her mail is delivered to a post office box that is closer to her boyfriend's house than to her father's house. She further admitted that she allowed her teenage daughter to live at the boyfriend's house for about six months.

According to Ms. Guggenbiller, her daughter had been sleeping on a trundle bed in the same room as her at her father's house. Because she trusts her boyfriend, she allowed her daughter to live at his house until the daughter went away to college.

{¶13} The boyfriend testified that Ms. Guggenbiller is at his house around 17 hours every day, minus the time she is at school, and that she manages his house and runs errands for him while he is at work. He testified that she goes grocery shopping for them and that they cook dinner or go out to eat together depending on when he arrives home. He testified that she has almost all of her possessions at his house, has put up pictures of her family members around it, and has helped him redecorate some of his rooms. He testified that she has clothes at his house, showers there, has had her newspaper delivered there, and does her laundry there. He testified that, while Ms. Guggenbiller's daughter was living with him, Ms. Guggenbiller increased the number of days that she would spend the night, and that they would do things like eat and watch television together as a family. The boyfriend also testified that Ms. Guggenbiller and he had discussed how to conduct their activities so that she would not lose her spousal support.

{¶14} Mr. Guggenbiller testified that he works near Ms. Guggenbiller's boyfriend's house and that the house is visible from the route he takes to work. He testified that he has frequently seen Ms. Guggenbiller's vehicle at her boyfriend's house during his commute. He also testified that he has driven by the boyfriend's house in the middle of the night and has regularly seen Ms. Guggenbiller's vehicle in the driveway on both weekend and weekday nights.

{¶15} The wife of Ms. Guggenbiller's father testified that Ms. Guggenbiller lives with her and her husband, showers there, does laundry there, keeps some food there, washes their dishes, and runs errands for her husband. She agreed, however, that the only furnishing that Ms.

Guggenbiller has at her father's house is a microwave oven. She also testified that the clothes Ms. Guggenbiller has at her father's house only take up about one-third of a closet.

{¶16} We have reviewed the record and conclude that there was some competent, credible evidence that Ms. Guggenbiller resides with her boyfriend instead of with her father. While she may sometimes sleep at her father's house in an attempt to avoid triggering the cohabitation condition, the trial court was entitled to believe Mr. Guggenbiller when he said that he had often seen Ms. Guggenbiller's vehicle at her boyfriend's house overnight on both weekday and weekend nights. Ms. Guggenbiller unquestionably kept most of her possessions at her boyfriend's house, including her dog, and had her bed in his bedroom. She also spent most of her waking hours at her boyfriend's house, maintained and improved it, and used it as the base for almost all of her daily activities.

{¶17} Ms. Guggenbiller has also argued that there was no evidence that she and her boyfriend shared finances and day-to-day incidental expenses. She has noted that her boyfriend and she both testified that they pay separately for their groceries, that they pay separately when they go out to dinner or attend social events, and that they maintain separate bank accounts.

{¶18} Ms. Guggenbiller's boyfriend testified that he provides a great deal of necessities for Ms. Guggenbiller on a monthly basis. He testified that, if they were not dating, she would have to find a residence, pay utilities, buy laundry equipment, obtain internet service, and find a place to store her possessions. He testified that, even though they did not share a bank account or credit card, he was footing a lot of her expenses on a monthly basis. According to the boyfriend, he would write checks to cash, sign them, and then give them to Ms. Guggenbiller. He also testified that it was their plan to not produce a paper trail of the expenses he was paying for her.

{¶19}  Mr. Guggenbiller also presented evidence that Ms. Guggenbiller pays some of her boyfriend's expenses.  According to Ms. Guggenbiller, her boyfriend owns a trailer that he keeps at a campground near Sandusky.  On weekends, they go to the campground together or sometimes she goes by herself or with friends.  According to the boyfriend, the cost for renting space at the campground is $1650 a year.  Mr. Guggenbiller presented four $150 checks that Ms. Guggenbiller had written to the campground from her personal account and a cashier's check for $750 that she paid to the camp.  While Ms. Guggenbiller testified that the personal checks were for gasoline, the note on each of the checks, including the cashier's check, indicated that they were for the boyfriend's campground space.  We, therefore, conclude that there was some competent, credible evidence to support the trial court's determination that Ms. Guggenbiller and her boyfriend shared expenses.

{¶20}  Ms. Guggenbiller has cited several cases by this Court in which the facts did not support a finding of cohabitation, including *Piscione v. Piscione*, 85 Ohio App. 3d 273 (1992), *In re Dissolution of Marriage of Briggs*, 129 Ohio App. 3d 346 (1998), and *Glaser v. Glaser*, 9th Dist. No. 05CA0014-M, 2006-Ohio-2555.  She has also cited *Jenkins v. Jenkins*, 9th Dist. No. 08CA009324, 2009-Ohio-75, in which the facts did support a cohabitation finding.  Ms. Guggenbiller has argued that the evidence for cohabitation in each of those cases was stronger than in this case.

{¶21}  In *Piscione*, there was evidence that the boyfriend spent nights at Ms. Piscione's house, kept clothes there, took vacations and celebrated holidays with the family, gave them gifts, and helped with Ms. Piscione's children's activities.  Mr. Piscione, however, did not present any evidence to demonstrate that Ms. Piscione financially supported her boyfriend or vice versa.  *Piscione v. Piscione*, 85 Ohio App. 3d 273, 274-75 (1992).  Similarly, in *Briggs*,

although Ms. Briggs and her boyfriend spent half the year living at Ms. Briggs's house and half the year living at her boyfriend's house, "[t]he evidence did not establish that [Ms.] Briggs was providing financial support to [her boyfriend] in an amount sufficient to establish cohabitation, or that he was providing such support to her." *In re Dissolution of Marriage of Briggs*, 129 Ohio App. 3d 346, 350 (1998). In *Glaser*, there was "unrebutted evidence that [Ms. Glaser] and [her boyfriend] did not share expenses with regard to financing and day-to-day incidental expenses." *Glaser*, 2006-Ohio-2555, at ¶11. Finally, the fact that the couple in *Jenkins* undeniably lived together for 15 months, divided financial responsibility for their shared household expenses, and held themselves out as a couple, does not mean that the evidence in this case did not also establish cohabitation. *Jenkins v. Jenkins*, 9th Dist. No. 08CA009324, 2009-Ohio-75, at ¶10-11.

{¶22} Upon review of the record, we conclude that the trial court's determination that Ms. Guggenbiller cohabited with her boyfriend is supported by some competent, credible evidence. Ms. Guggenbiller's second assignment of error is overruled.

CONCLUSION

{¶23} The trial court had jurisdiction to terminate Mr. Guggenbiller's spousal support obligation upon a determination that Ms. Guggenbiller was cohabiting with another person, other than Mr. Guggenbiller, in a relationship comparable to marriage. In addition, there is some competent, credible evidence in the record that Ms. Guggenbiller was cohabiting with her boyfriend. The judgment of the Lorain County Domestic Relations Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CLAIR E. DICKINSON
FOR THE COURT

CARR, J.
CONCURS

BELFANCE, P. J.
DISSENTS, SAYING:

{¶24} I respectfully dissent as I would sustain Ms. Guggenbiller's first assignment of error.

{¶25} The Supreme Court of Ohio has concluded that "a motion to terminate spousal support falls within the definition of a 'modification,' since it seeks to alter, change, or reduce the support award." *Kimble v. Kimble*, 97 Ohio St.3d 424, 2002-Ohio-6667, at ¶7. The *Kimble* Court held that R.C. 3105.18(E) controls when a spousal support award can be terminated since a termination is a modification. See id. at ¶¶4-7 ("'Modification' and 'termination' of an

alimony award are simply different points or degrees on the same continuum.").  The Supreme Court of Ohio has further held that "[a] trial court lacks jurisdiction to modify a prior order of spousal support unless the decree of the court expressly reserved jurisdiction to make the modification and unless the court finds (1) that a substantial change in circumstances has occurred and (2) that the change was not contemplated at the time of the original decree." *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, at paragraph two of the syllabus.

{¶26}  In the instant matter, as Mr. Guggenbiller filed the motion to terminate spousal support, it was his burden to demonstrate that a substantial change in circumstances not contemplated at the time of the divorce had occurred.  See *Lumpkin v. Lumpkin*, 9th Dist. No. 21305, 2003-Ohio-2841, at ¶14 ("The burden of proving a change in circumstances is on the party seeking the modification."). The evidence established that Ms. Guggenbiller and Mr. Riggs were engaged in a relationship prior to and at the time of the divorce. Notwithstanding his investigation of and knowledge of the relationship, Mr. Guggenbiller agreed to pay spousal support for a definite term.  I would conclude that Mr. Guggenbiller failed to satisfy his burden as articulated in *Mandelbaum*, as there was no evidence presented to establish that Ms. Guggenbiller's current living arrangements and relationship constituted a substantial change of circumstances not contemplated at the time of the divorce.

{¶27}  Notwithstanding the above, however, even if I were to conclude that *Mandelbaum* was inapplicable, and if I were to adopt the "condition subsequent" paradigm adopted by the majority, I would still conclude that Mr. Guggenbiller failed to meet his burden as he failed to demonstrate that Ms. Guggenbiller's living arrangements and relationship were conditions subsequent.  A condition subsequent necessarily contemplates some *subsequent* condition other

than what existed at the time of the decree. See, e.g., *Dickerson v. Dickerson* (1993), 87 Ohio App.3d 848, 851 ("Because appellee, Dawn and Louis were all sharing the home when the decree issued, and the decree called for spousal support to 'continue' until appellee cohabited, we must assume that the parties envisioned a circumstance, other than that existing at the time, which would end the obligation to pay spousal support."). Thus, because Mr. Guggenbiller did not demonstrate that the circumstances concerning Ms. Guggenbiller's relationship and living arrangements were different than that which existed at the time of the divorce, the record does not support the existence of a condition subsequent. Accordingly, I would sustain Ms. Guggenbiller's first assignment of error. Further, I would decline to address her second assignment of error, as it would be rendered moot.

APPEARANCES:

PAULETTE J. LILLY, Attorney at Law, for Appellant.

VINCENT A. STAFFORD and ANNE F. COAN, Attorneys at Law, for Appellee.