DICKERSON, Appellant,

v.

DICKERSON, Appellee.

[Cite as *Dickerson v. Dickerson* (1993), 87 Ohio App.3d 848.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–386.

Decided July 30, 1993.

*James S. Adray,* for appellant.

*Gene W. Krick,* for appellee.

SHERCK, Judge.

This is an appeal from the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, denying a motion to terminate spousal support. Because we find that the trial court did not abuse its discretion in construing an ambiguous term in its own prior judgment, we affirm.

In 1991, appellant Ronald L. Dickerson and appellee Linda K. Dickerson were divorced. Incorporated in their final divorce decree was a separation agreement which the parties had previously signed. The relevant portion of the decree provided that appellant was to pay spousal support beginning May 31, 1991. That obligation was to continue "until the death of [the appellee], death of [appellant], remarriage of [the appellee] *cohabitation by [the appellee] as defined in accordance with the general principles set forth in the Birthelmer Court of Appeals Case known as Case No. C.A.L. 83–046 * * ** or eight (8) years from commencement of said spousal support, whichever event first occurs." (Emphasis added.)

In June 1992, appellant filed a motion for termination of spousal support alleging that appellee was cohabiting with her daughter, Dawn, and Dawn's boyfriend, Louis Castilla. At a hearing on the motion, the parties stipulated to facts that were adopted by the trial court. Among the stipulations were that Dawn had been living with appellee at the time of the divorce. Further, the parties stipulated that as of February 23, 1992, Louis had been living in the home for fourteen to sixteen months.[1]

---

1. We note that fourteen months prior to February 1992 is December 1990, eight months prior to the issuance of the divorce decree. We further note that the parties had been divorced for less than ten months when appellant filed his motion asserting that Louis and Dawn had been living with appellee for "over a year."

In addition, the parties stipulated that Dawn contributed to the expenses of the household and Louis "contributed in kind, for example, food." There was no evidence or stipulations regarding the extent of those contributions.

The parties also stipulated that appellee was not having a sexual relationship with Louis.

Following the hearing, the referee recommended that the motion be denied. The trial court overruled appellant's objections, adopted the report of the referee and denied the motion to terminate spousal support. Appellant then appealed, offering the following two assignments of error:

"I. The trial court erred by adopting and affirming the referee's report, insofar as the report stated that *Birthelmer* [*v. Birthelmer* (July 15, 1983), Lucas App. No. L–83–046, unreported, 1983 WL 6869] required cohabitation be based upon the 'living together' test established in *Sindel v. Sindel* [ (App.1975), 7 O.O.3d 223].

"II. The trial court erred in determining that to apply the *Birthelmer, supra* decision where an adult child along with an unrelated adult shares a home is not just or equitable in the result."

■ In his first assignment of error, appellant argues that the stipulated facts required the trial court to conclude that appellee was cohabiting with her daughter and the daughter's boyfriend. However, the parties in their agreement, and the trial court in its decree, failed to define the term "cohabitation" with any specificity. Instead, the parties and the court alluded to *Birthelmer v. Birthelmer* (July 15, 1983), Lucas App. No. L–83–046, unreported, 1983 WL 6869, as an aid to defining this ambiguous term.

In *Birthelmer,* we described a lifestyle, not a housing arrangement, in dealing with the issue of "cohabitation." Furthermore, while we remarked on three factors affecting the question of cohabitation, we termed those factors "the principle relevant considerations." We did not declare that there were no other considerations, nor did we indicate the relative weight to be placed upon the three enunciated circumstances.[2] The trial court, then, was in a position to address those unanswered questions in the manner that the court considered to be just.

■ It is not for this court to define the term "cohabiting" and apply it to the facts of this case. It is the trial court that has the power to enforce the agreement, to clarify any confusion, and to resolve any disputes relative to the

---

**2.** The three principal relevant considerations expressed in *Birthelmer* are: (1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses. However, we note that, in *Birthelmer,* there was a specific factual finding that the individuals involved had "a dating and sexual relationship."

separation agreement and the court's decree. *Saeks v. Saeks* (1985), 24 Ohio App.3d 67, 70, 24 OBR 122, 124, 493 N.E.2d 280, 282–283. When an ambiguous term in a separation agreement is incorporated into a divorce decree, the court that issued the decree has broad discretion in clarifying ambiguous language "by considering not only the intent of the parties but the equities involved." *In re Dissolution of Marriage of Seders* (1987), 42 Ohio App.3d 155, 156, 536 N.E.2d 1190, 1192.

■ Whether or not a particular arrangement rises to that lifestyle known as "cohabiting" is a factual question to be initially determined by the trial court. This court will give great deference to the conclusion of the trial court, especially here where the court was called upon to construe its own judgment.

In this case, the parties must have had some meaning to the term "cohabitation" when they incorporated it into their separation agreement. Because appellee, Dawn and Louis were all sharing the home when the decree issued, and the decree called for spousal support to "continue" until appellee cohabited, we must assume that the parties envisioned a circumstance, other than that existing at the time, which would end the obligation to pay spousal support.

Appellant, as the moving party, bore the burden of persuading the court that the conditions existed—that appellee was cohabiting. The trial court was unpersuaded by the stipulated facts and we cannot say as a matter of law that the trial court erred. Accordingly, appellant's first assignment of error is not well taken.

■ In his second assignment of error, appellant contends that the trial court erred by examining the equities of the case.

If the original agreement and decree were clear and unambiguous, there would be no need for construction. However, an ambiguous term such as "cohabitation" does not become clear by adding a reference to the "general principles" of an appellate decision that relies on forty-seven different factual findings, announces an incomplete definition and incorporates other ambiguous terms. Because the divorce decree was not clear and unambiguous, the trial court was required to construe and interpret its prior decision.

As we previously explained, when a trial court is called upon to interpret its own prior decision, the court may consider the equities of the case as well as the intent of the parties. *In re Dissolution of Marriage of Seders, supra.* Accordingly, appellant's second assignment of error is not well taken.

Upon consideration whereof, the court finds that substantial justice has been done the party complaining. The judgment of the Lucas County Court of

852

Common Pleas, Domestic Relations Division, is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK and ABOOD, JJ., concur.