This is an appeal from a Jackson County Common Pleas Court judgment terminating the ogligation of James Geitz, movant below and appellee herein, to pay spousal support to Renna Geitz, respondent below and appellant herein.
Appellant raises the following assignment of error for review:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE'S MOTION FOR TERMINATION OF SPOUSAL SUPPORT WHERE THE SEPARATION AGREEMENT AND THE DISSOLUTION DECREE PROVIDED THAT SUCH OBLIGATION WOULD TERMINATE UPON PLAINTIFF/APPELLANT'S '* * * COHABITATION WITH ANOTHER ADULT MALE NOT HER KIN,' AND WHERE THE FACTS ESTABLISH THAT SHE DID HAVE AN ADULT MALE NOT HER KIN STAYING AT HER HOME ON A FREQUENT BASIS, BUT WHERE HE PROVIDED NO FINANCIAL OR OTHER SUPPORT FOR HER OR FOR HER HOUSEHOLD, SHE PROVIDED NO SUBSTANTIAL SUPPORT FOR HIM, AND WHERE NEITHER HE NOR SHE ASSUMED THE NORMAL OBLIGATIONS CONSISTENT WITH OR ANALOGOUS TO A MARRIAGE. THE TRIAL COURT'S FINDING OF 'COHABITATION' UNDER THE FACTS OF THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND CONTRARY TO OHIO LAW."
Our review of the record reveals the following facts pertinent to the instant appeal. On August 1, 1970, the parties were married. On December 29, 1992, the parties entered into a separation agreement. On December 30, 1992, the parties filed a petition for dissolution of marriage. On February 9, 1993, the trial court dissolved the parties' marriage and incorporated the separation agreement into the dissolution decree.
The separation agreement incorporated into the dissolution decree required appellee to pay appellant spousal support in the amount of $600 per month for every month that either of the parties' two children attended college full-time, and in the amount of $800 per month for every month that neither of the parties' two children attended college full-time. The separation agreement obligated appellee to pay spousal support for a duration of eight years, unless appellant remarried, died, or "co-habitat[ed] with another adult male not her kin."
On April 6, 1998, appellee filed a motion to terminate his spousal support obligation. Appellee asserted that appellant was cohabitating with another adult male not her kin and that the trial court, pursuant to the separation agreement, should terminate his spousal support obligation.
On May 18, 1998, the trial court held a hearing regarding appellee's motion to terminate spousal support. At the hearing, appellant denied that she was cohabitating with Dale Ross, the person with whom appellee alleged appellant was cohabitating. Rather, appellant stated that since June of 1997, Ross has been a "daily guest" in her home. Appellant explained that Ross's daughter and two grandchildren live in Ross's home in Waverly, Ohio, and that she invited Ross to stay as a "guest" in her home until his daughter and two grandchildren found a place of their own. Appellant further testified that: (1) she cooks meals for herself and Ross; (2) Ross sleeps at her home; (3) appellant launders Ross's clothes at her home; and (4) Ross helps with household repairs.
Ross testified that he maintains his own home in Waverly and that he does not contribute any expenses for maintaining appellant's home. When appellee's counsel asked Ross whether he was living at appellant's home, Ross replied, "yes."
Thomas L. Hammon, a private investigator, testified that appellee hired him to observe appellant's home to determine whether another man was living at her home. Hammon stated that from February 23, 1998 to February 28, 1998, he conducted a "limited surveillance" of appellant's home. Hammon observed that Ross's vehicle was at appellant's home during the evenings and into the night.
Bobbie Geitz, appellee's current wife, testified that she rummaged through appellant's trash and found items that she believed indicated that Ross was living with appellant. Geitz found a note in the trash which Ross had written. The note listed Ross's home phone number as "Jackson, 286-6164," which is the phone number for appellant's residence. Geitz stated that she also found other items in the trash that belonged to an adult male.
Appellee introduced other evidence tending to demonstrate that Ross cohabitated with appellant. Appellee produced an envelope containing appellant's address that was addressed to "Mr. Dale Ross and Renna." Appellee also presented testimony that appellant and Ross traveled together and that Ross paid for the trips.
On August 21, 1998, the trial court entered judgment terminating appellee's spousal support obligation. The trial court found that the following factors demonstrated that Ross cohabitated with appellant: (1) since June of 1997, Ross had been a daily overnight guest at appellant's home; (2) Ross did not contribute to appellant's household expenses; (3) appellant supported Ross and provided Ross with a place to live, with electricity, with heat, and with food, all without Ross's financial contribution; and (4) Ross received mail at appellant's home.
Appellant filed a timely notice of appeal.
In her sole assignment of error, appellant asserts that the trial court's judgment is against the manifest weight of the evidence and is contrary to law. In particular, appellant contends that the manifest weight of the evidence fails to demonstrate that she was "cohabitating with another adult male not her kin," as defined in Ohio case law. Appellant argues that: (1) no evidence exists to establish that Ross provided her with monetary support; (2) the evidence demonstrates that she provided, at most, de minimis support for Ross; and (3) she and Ross did not "assume obligations, including support, equivalent to those arising from a ceremonial marriage."
Appellee asserts that substantial, competent and credible evidence supports the trial court's decision that appellant and Ross were "cohabitating." Appellee claims that the following evidence supports the trial court's finding of cohabitation: (1) Ross contributed no money to appellant for food or other household expenses; (2) Ross helped with appellant's household repairs; (3) Ross gave appellant's home phone number as his home phone number; (4) Ross received mail at appellant's home; and (5) Ross and appellant travel together.
We initially note that our standard of review in the case at bar consists of two components. First, we review the trial court's finding of cohabitation pursuant to the manifest weight standard of review. A reviewing court will not reverse a trial court's decision as being against the manifest weight of the evidence if competent, credible evidence supports the trial court's judgment. See Vogel v. Wells (1991), 57 Ohio St.3d 91,566 N.E.2d 154; Ross v. Ross (1980), 64 Ohio St.2d 203,414 N.E.2d 426; C.E. Morris v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. In determining whether a trial court's judgment is against the manifest weight of the evidence, a reviewing court must not re-weigh the evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80,461 N.E.2d 1273, 1276. An appellate court should not substitute its judgment for that of the trial court when competent, credible evidence going to all of the essential elements of the case exists. As the court stated in Seasons Coal, 10 Ohio St. 3
d at 80, 461 N.E.2d at 1276:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
Second, we review the trial court's decision to terminate the spousal support award pursuant to the abuse of discretion standard of review. In determining whether to terminate a spousal support award, a trial court generally possesses broad discretion. See Donovan v. Donovan (1996), 110 Ohio App.3d 615,621, 621, 674 N.E.2d 1252, 1255 (citing Booth v. Booth (1989),44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030). Accordingly, absent an abuse of discretion, a reviewing court will not reverse a trial court's judgment regarding termination of a spousal support award. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. A trial court abuses its discretion when the trial court acts in an unreasonable, arbitrary, or unconscionable manner. Id. When employing the abuse of discretion standard of review, an appellate court may not substitute its judgment for that of the trial court. In re JaneDoe 1; Berk v. Matthews (1990), 53 Ohio St.3d 161,559 N.E.2d 1301 (citing Buckles v. Buckles (1988), 46 Ohio App.3d 102, 546 N.E.2d 950).
In the case sub judice, we find that the record contains sufficient competent, credible evidence to support the trial court's finding that appellant and Ross were cohabitating. Sufficient competent, credible evidence exists in the record to support the trial court's finding that appellant cohabitated with another male not her kin. Moreover, we do not believe that the trial court abused its discretion by terminating appellant's spousal support.
We note that within the context of domestic relations, cohabitation implies that the former spouse and the paramour have lived together for a period of time and have assumed obligations, including financial support, traditionally associated with marriage. Thomas v. Thomas (1991), 76 Ohio App.3d 482,486, 602 N.E.2d 385, 388; Bussey v. Bussey (1988),55 Ohio App.3d 117, 563 N.E.2d 37; see, also, Barrett v. Barret
(June 10, 1996), Butler App. No. CA95-06-110, unreported (stating that cohabitation suggests not only a relationship between two parties, sexual or otherwise, but also implies that some sort of monetary support exists between the former spouse and the paramour so as to constitute the "functional equivalent of marriage"). In State v. Williams (1997), 79 Ohio St.3d 459,464-65, 683 N.E.2d 1126, 1130, the court defined the "essential elements of 'cohabitation' " as follows:
 "The essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium. * * * Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors provide a framework to determine cohabitation; the weight given to them will differ from case to case."
(Citation omitted.); see, also, Moell v. Moell (1994), 98 Ohio App.3d 748,752, 649 N.E.2d 880, 883; Barclay v. Barclay (Dec. 11, 1997), Franklin App. No. 97 APF 07-902, unreported (utilizing Williams analysis to determine whether parties "cohabitated" for purposes of terminating spousal support). Thus, before a trial court may terminate a spousal support obligation pursuant to a cohabitation clause, the payor spouse generally must establish that: (1) the payee spouse is living with another male or female not his or her kin; and (2) financial support exists between the two parties. See Miller,supra. See, generally, Taylor v. Taylor (1983), 11 Ohio App.3d 279, 465 N.E.2d 476. We note that whether two parties "cohabit" is a question of fact to be resolved by the trial court. Moell, 98 Ohio App.3d at 752, 649 N.E.2d at 883;Dickerson v. Dickerson (1993), 87 Ohio App.3d 848, 851,623 N.E.2d 237, 239.
In Moell, 98 Ohio App.3d at 751, 649 N.E.2d at 883, the court discussed the rationale underlying a cohabitation clause as follows:
 "The purpose of a cohabitation clause is to prevent inequity in two situations involving spousal support. The first situation occurs when an ex-spouse would receive support from two sources, each of whom is either legally obligated or voluntarily undertakes the duty of total support. * * * The second situation arises when the ex-spouse who is receiving spousal support uses such payments to support a nonrelative member of the opposite sex. * * * Cohabitation, in the legal sense, thus implies that 'some sort of monetary support is being provided by the new partner or for the new partner. Without a showing of support, merely living together is insufficient to permit termination of [spousal support].' "
(Emphasis added) (citations omitted); see, also, Wolfe v. Wolfe
(1976), 46 Ohio St.2d 399, 420-21, 350 N.E.2d 413, 427 (quotingGarlinger v. Garlinger (1975), 137 N.J. Super. 56,347 A.2d 799) (" '[I]f the paramour resides in the wife's home without contributing anything toward the purchase of food or the payment of normal household bills, then there may be a reasonable inference that the wife's [support] is being used, at least in part, for the benefit of the paramour, in which case it could be argued with force that the amount thereof should be modified accordingly.' "); Slack v. Slack (Nov. 8, 1995), Ross App. No. 94 CA 2050, unreported (stating that "[i]f the ex-spouse is living with another person, and that person * * * is being supported by the ex-spouse, then the underlying purpose for the spousal support is reduced or does not exist").
In the case at bar, the first concern expressed inMoell is not implicated. Neither party has argued that Ross either is legally obligated or has voluntarily undertaken a duty of total support. The second concern expressed in Moell, that the ex-spouse may use his or her spousal support funds to help support his or her paramour, is, however, implicated. The undisputed evidence demonstrates, inter alia, that: (1) Ross lived at appellant's home without cost; (2) appellant provided Ross with meals without cost; and (3) appellant laundered Ross's clothes without cost. Thus, because "[Ross] resides in [appellant's] home without contributing anything toward the purchase of food or the payment of normal household bills," the trial court could have reasonably inferred that appellant used her support, "at least in part, for the benefit of [Ross]."Wolfe, supra. Consequently, we agree with the trial court's finding that appellant and Ross were "cohabitating." We find sufficient competent and credible evidence to support the trial court's finding.
Furthermore, we do not believe that the trial court abused its discretion by terminating appellee's spousal support obligation. We note that the separation agreement that appellee and appellant executed explicitly provided that appellee's spousal support obligation would terminate if appellant cohabitated with another male not her kin.
Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, P.J.: Concur in Judgment Opinion
For the Court
 BY: ___________________________ Peter B. Abele Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.