OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and appellant's oral argument to this court. Defendant-Appellant, Dwight Pavkovich, appeals the decision of the Mahoning County Court of Common Pleas, Domestic Relations Division, which granted the motion of Plaintiff-Appellee, Glenna Oliver-Pavkovich, for a new qualified domestic relations order ("QDRO").
 {¶ 2} Glenna argues Dwight's appeal is not timely filed, but this argument is meritless since the order being appealed from is not a nunc pro tunc entry pursuant to Civ.R. 60(A). Dwight argues the trial court did not have jurisdiction to issue a new QDRO. But the trial court specifically retained jurisdiction to enter new orders to enforce its award of Dwight's pension plan benefits. Because neither of the first two QDROs enforced the trial court's judgment, the trial court had jurisdiction to issue the new QDRO. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 3} Dwight and Glenna were divorced on October 8, 1996. At the time of the divorce, Dwight had a vested pension through his work at the post office. Accordingly, the divorce decree provided that "[a] Qualified Domestic Relations Order shall be issued against said Pension and a copy shall be forwarded to the U.S. Postal Service." The trial court issued a QDRO against Dwight's thrift savings plan on November 12, 1997.
 {¶ 4} On March 27, 2000, Glenna moved for a new QDRO based on the fact that the original QDRO was issued to the wrong address and asked that Dwight be ordered to sign that QDRO. A magistrate found the QDRO was issued to the wrong plan, the thrift savings plan instead of the pension plan. In addition, it found Dwight did not need to sign a new QDRO before it took effect. Accordingly, the magistrate ordered Glenna prepare a QDRO which conformed to the judgment entry. Neither party objected to this decision and the trial court adopted it. The trial court then issued a new QDRO on June 26, 2000. Subsequently, the trial court amended that QDRO.
 {¶ 5} On November 9, 2001, Glenna again moved for a new QDRO. She stated that the pension plan administrator rejected the QDRO. Accordingly, she requested a QDRO which met the plan administrator's requirements. Dwight objected to this motion, claiming the divorce decree provided for one QDRO and that QDRO was issued on November 12, 1997. The magistrate heard the parties' arguments and the magistrate approved the new QDRO. Dwight filed objections to the magistrate's decision, which the trial court overruled, and issued a new QDRO against Dwight's pension plan.
 Timeliness of Appeal {¶ 6} Before addressing the merits of Dwight's appeal, we must first address Glenna's challenge to the timeliness of Dwight's appeal. According to Glenna, the changes to the QDRO issued in 2002 were merely clerical or mechanical changes. Thus, she argues the issues Dwight raises on appeal should have been raised after the trial court issued the first QDRO against the pension plan on June 26, 2000. Accordingly, she believes Dwight's appeal is untimely. Dwight has not responded to this argument.
 {¶ 7} Glenna's argument stems from her belief that the differences between the second and third QDRO were merely clerical or mechanical. Thus, she cites law dealing with Civ.R. 60(A) entries. Civ.R. 60(A) allows a trial court to correct "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission." That Rule does not authorize a trial court to make substantive changes. State ex rel. Litty v. Leskovyansky (1996), 77 Ohio St.3d 97,100, 671 N.E.2d 236. "The function of nunc pro tunc is not to change, modify, or correct erroneous judgments but merely to have the record speak the truth." Ickes v. CNA Ins. 5th Dist. No. 2001CA00241, 2002-Ohio-2531, at ¶ 19; Dentsply Internatl., Inc. v. Kostas (1985),26 Ohio App.3d 116, 26 OBR 327, 498 N.E.2d 1079. Accordingly, its proper use is limited to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide. Leskovyansky at 100.
 {¶ 8} In this case, the trial court did not issue a nunc pro tunc entry because the changes in the 2002 entry are not merely clerical or mechanical. A clerical mistake is mechanical in nature, apparent on the record, and does not involve a legal decision or judgment by an attorney. Leskovyansky at 100; Dentsply at paragraph two of the syllabus. The Twelfth District explained that the fundamental difference between clerical and substantive mistakes is that the former is a "blunder in execution" while the latter is when a court makes a different decision:
 {¶ 9} "[S]ubstantive mistakes that cannot be corrected [under Civ.R. 60(A) are] instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner." Kuehn v. Kuehn (1988),55 Ohio App.3d 245, 247, 564 N.E.2d 97, citing Blanton v. Anzalone (C.A. 9, 1987), 813 F.2d 1574, 1577.
 {¶ 10} For example, a change is mechanical or clerical when the judgment entry disagrees with a trial court's on-the-record pronouncement or it changes an item like a date or a number in a judgment entry.Kuehn; Allen v. Allen (Mar. 31, 2000), 11th Dist. No. 99-T-0011; W.E.Quicksall and Associates, Inc. v. Gibson (July 8, 1996), 5th Dist. No. 95AP090061. But a change is substantive when a court is deciding an issue not previously decided or corrects a deliberate, affirmative, but incorrect choice. Cureton v. Brenneman (June 8, 2001), 6th Dist. No. L-00-1025; Harlett v. Harlett (Nov. 1, 1996), 2nd Dist. No. 15799.
 {¶ 11} In this case, there were substantial differences between the second and third QDROs. For instance, the third QDRO required that Dwight give Glenna thirty days written notice of his actual date of retirement. No such requirement was in the second QDRO. Since there are substantive differences between the second and third QDROs, the caselaw dealing with nunc pro tunc entries does not apply. Accordingly, Glenna's argument concerning the timeliness of Dwight's appeal is meritless.
 The QDRO {¶ 12} Dwight's sole assignment of error argues:
 {¶ 13} "The trial court erred and abused its discretion by adopting additional qualified domestic relations orders to effectively modify the separation agreement in the original divorce decree when it's [sic] lacked the jurisdiction to do so."
 {¶ 14} Dwight argues that the parties' divorce decree provided thata QDRO would be issued. Accordingly, he maintains that the trial court only had jurisdiction to issue one QDRO. As the trial court issued that QDRO in 1997, the trial court did not have jurisdiction to issue another one in 2002. He argues that if Glenna wanted to amend the QDRO issued because of deficiencies in that QDRO, then she should have done so through the procedure provided in Civ.R. 60(B).
 {¶ 15} In response, Glenna argues that the newest QDRO is not a modification of the parties' original property division. Rather, she contends the new entry is merely a supplemental order to enforce the terms of the original divorce decree. She concedes that the trial court does not have jurisdiction to modify that property division, but she argues the trial court always has jurisdiction to enforce that division. She also argues that if the original decree was ambiguous, then the trial court did not abuse its discretion by deciding that it was allowed to issue an amended QDRO.
 {¶ 16} As each party points out in their briefs, this court's standard of review over the trial court's decision differs depending on whether it finds the original divorce decree is ambiguous or not. When a divorce decree contains an ambiguous term, then the trial court has broad discretion when clarifying the ambiguous language. Dickerson v.Dickerson (1993), 87 Ohio App.3d 848, 851, 623 N.E.2d 237; Collette v.Collette (Aug. 22, 2001), 9th Dist. No. 20423. But if the terms of the decree are unambiguous, then courts must apply normal rules of construction and this court's review is de novo. Id.
 {¶ 17} A retirement benefit that one of the spouses acquired during the marriage is a marital asset that must be divided equitably between them by a domestic relations court entering a divorce decree terminating the marriage. R.C. 3105.171; McKinney v. McKinney (2001),142 Ohio App.3d 604, 608, 756 N.E.2d 694. After the court issues the divorce decree, it is prohibited from modifying that equitable division. R.C. 3105.171(I). However, this does not prevent a court from entering further orders, such as QDROs, which help execute that decree. McKinney
at 608.
 {¶ 18} "A QDRO is a current distribution of the rights in a retirement account that is payable in the future, when the payee retires. It is ordinarily issued subsequent to and separate from the decree of divorce itself, after the employer payor has approved its terms as conforming with the particular pension plan involved. A QDRO is, therefore, merely an order in aid of execution on the property division ordered in the divorce decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3109.171(I) prohibits, and the court does not lack jurisdiction to issue it." Id., citing Tarbert v. Tarbert (Sept. 27, 1996), 2nd Dist. No. 96-CA-0036.
 {¶ 19} If a trial court enters a QDRO, it cannot modify that QDRO unless it expressly reserves the power to do so. Gordon v. Gordon
(2001), 144 Ohio App.3d 21, 24, 759 N.E.2d 431; Schrader v. Schrader
(1995), 108 Ohio App.3d 25, 28, 669 N.E.2d 878.
 {¶ 20} In the divorce decree, the trial court found Dwight had a vested pension plan valued at $128,000.00. Section 11 of that decree provided how the trial court intended to divide this marital asset. It stated it would issue a QDRO against the pension Dwight had with the U.S. Postal Service. It further provided that it was retaining jurisdiction to enter further orders which might be necessary to enforce the award of those benefits to Glenna. More specifically, the decree provided as follows:
 {¶ 21} "11. The Defendant has a Vested Pension with U.S. Postal Service which accrued during overture. A Qualified Domestic Relations Order shall be issued against said Pension and a copy shall be forwarded to U.S. Postal Service. * * *
 {¶ 22} "The Defendant/Participant shall not take any actions, affirmative or otherwise, that can circumvent the terms and provisions of the QDRO, or that could diminish or extinguish the rights and entitlements of the Plaintiff/Alternate Payee under the terms of the QDRO.
 {¶ 23} "The Court shall retain jurisdiction to enter such further orders as are necessary to enforce the award to spouse of the Pension Benefits awarded herein, including the recharacterization thereof as a division of retirement benefits payable under another retirement system, or to make an award of alimony (in the sum of benefits payable under the Participant's current retirement plan plus future costs of living adjustments) in the event that the Participant fails to comply with the provisions contained above requiring the application for separation benefits, disability benefits, the filing of bankruptcy, or upon other government regulations or restrictions that interfere with payments to the Alternate Payee as set forth herein, or if the Participant fails to comply with the provisions contained above requiring said payments to Alternate Payee."
 {¶ 24} Dwight focuses on the decree's statement that "[a] Qualified Domestic Relations Order shall be issued." But the divorce decree's language unambiguously states that the QDRO would be issued against Dwight's U.S. Postal Service pension plan. In addition, it unambiguously reserves the right to modify the QDRO as necessary to enforce the trial court's award of those pension benefits to Glenna.
 {¶ 25} The first QDRO was issued against Dwight's thrift savings plan rather than his pension plan. Thus, the first QDRO violated the terms of the divorce decree by failing to ensure that Glenna received the benefits she was awarded under that decree. Accordingly, the trial court had jurisdiction to issue a QDRO against Dwight's Postal Service pension plan even though it already issued one QDRO.
 {¶ 26} In addition, in the original decree the trial court retained jurisdiction to issue new QDROs if they were necessary to enforce its division of Dwight's pension benefits. Because the trial court's division of those benefits could not be accomplished by the first QDRO, the second QDRO was necessary to enforce the terms of the divorce decree. Accordingly, the trial court specifically retained jurisdiction to effect this change. The trial court also had jurisdiction to enter the third QDRO. The plan administrator rejected the second QDRO. Accordingly, the trial court's division of the pension benefits could not be accomplished without a third QDRO. Because it was necessary to enter a third QDRO to enforce the decree and the trial court specifically retained jurisdiction to do so, its exercise of that jurisdiction was proper.
 {¶ 27} Dwight's argument that the trial court did not have jurisdiction to issue the third QDRO focuses on one phrase within the parties' divorce decree. But when looking at the whole decree, it is clear that the trial court retained jurisdiction to modify the QDRO or issue new QDROs so it could enforce its actual property division. Neither of the first two QDROs actually enforced the trial court's division of Dwight's pension.
 {¶ 28} The first was not issued against that pension and the second was rejected by the pension plan's administrator. Accordingly, the trial court had jurisdiction to issue the third QDRO in order to enforce the divorce decree.
 {¶ 29} Dwight's sole assignment of error is meritless and the judgment of the trial court is affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.