[Cite as *Czalkiewicz v. Czalkiewicz*, 2017-Ohio-747.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104654

---

## PAULA CZALKIEWICZ

### PLAINTIFF-APPELLEE

vs.

## THEODORE CZALKIEWICZ

### DEFENDANT-APPELLANT

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-10-332781

**BEFORE:** S. Gallagher, J., E.T. Gallagher, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 2, 2017

**ATTORNEY FOR APPELLANT**

John V. Heutsche
John V. Heutsche Co., L.P.A.
Hoyt Block Building, Suite 220
700 West St. Clair Avenue
Cleveland, Ohio   44113-1273


**ATTORNEY FOR APPELLEE**

Kevin L. Starrett
Law Offices of Kevin L. Starrett
160 E. Washington Street
P.O. Box 576
Chagrin Falls, Ohio   44022

SEAN C. GALLAGHER, J.:

{¶1} Defendant-appellant, Theodore Czalkiewicz ("Ted"), appeals the judgment of the trial court that found he was in contempt for failing to comply with his spousal support obligation owed to plaintiff-appellee Paula Czalkiewicz ("Paula") and granted Paula's motions related thereto. Upon review, we reverse the judgment of the trial court and remand the matter with instructions for the court to vacate the finding of contempt and terminate the spousal support obligation effective June 1, 2014.

{¶2} The parties to this action were divorced in June 2011. The judgment entry of divorce incorporated the parties' separation agreement. Pursuant to the terms of the divorce decree, Paula was ordered to pay child support to Ted, and Ted was ordered to pay spousal support to Paula. Because of the competing obligations, the court instructed in the divorce decree that "CSEA [Cuyahoga Support Enforcement Agency] shall only collect and pay to [Paula] the difference between [Ted's] spousal support obligation and [Paula's] child support obligation until [Paula's] obligation to pay child support shall cease * * *." The divorce decree provided for the termination of child support, which in this case occurred when the child graduated from high school and reached the age of 18.

{¶3} The divorce decree further instructed that Ted's payments for spousal support were to commence July 1, 2011, with the added language "through CSEA as long as there is a child support obligation." As to the termination of spousal support, the divorce decree provided that "all payments shall terminate upon the death of either party or

[Paula's] remarriage or cohabitation as defined by *Dickerson* [*v. Dickerson*, 87 Ohio App.3d 848, 623 N.E.2d 237 (6th Dist.1993)]." The court retained jurisdiction to modify the spousal support order. This was consistent with the terms of the parties' separation agreement.

{¶4} On August 14, 2014, the trial court issued an order that accepted the findings and recommendations of the Cuyahoga Job and Family Services, Office of Child Support Services ("CJFS-OCSS") regarding the administrative termination of support, dated July 2, 2014, "as the revised Court child support order." The CJFS-OCSS findings and recommendations dated July 2, 2014, identified Ted as the obligor and Paula as the obligee. The CJFS-OCSS findings and recommendations were reissued on July 14, 2014, and reversed the designation of the parties as obligor and obligee. The findings and recommendations were otherwise identical to those issued on July 2, 2014, and pertained to the termination of child support. On September 12, 2014, the trial court issued an order accepting the findings and recommendations dated July 14, 2014, "as the revised Court child support order."

{¶5} Paula stopped receiving spousal support payments in June 2014. On August 25, 2014, Paula filed a motion to show cause, motion to secure payment of future spousal support, and motion for attorney fees. Ted filed a motion to dismiss Paula's motions. He argued that the trial court's order of August 14, 2014, effectively terminated his spousal support obligation because the CJFS-OCSS findings and recommendations accepted by the court had designated him as the obligor. He claimed that the trial court's

subsequent order of September 12, 2014, then operated to terminate Paula's obligation to pay child support. A hearing was held before a court magistrate who issued a decision to deny the motion. Subsequently, the magistrate issued an amended decision that was adopted by the trial court.

{¶6} Thereafter, a hearing was held before the magistrate on Paula's motions. Ted asserted that the trial court's order of August 14, 2014, terminated his spousal support obligation. He further asserted that the support obligation was terminated because of cohabitation by Paula. The magistrate's decision rejected these arguments and granted Paula's motions. The trial court overruled the objections and adopted the magistrate's decision in its entirety.

{¶7} Ted timely filed this appeal. He raises four assignments of error for our review.

{¶8} Under his first three assignments of error, Ted claims that the trial court erred by (1) approving the magistrate's decision that denied his motion to dismiss, (2) proceeding upon Paula's motion to show cause, and (3) granting implied relief from judgment. All three claims are premised upon the proposition that the CJFS-OCSS's findings and recommendations, which were accepted by the trial court, terminated his spousal support obligation. We find no merit to these assignments of error.

{¶9} It is readily apparent that the CJFS-OCSS findings and recommendations pertained only to the child support obligation. Although appellant was initially designated as an "obligor," the CJFS-OCSS reissued its findings and recommendations

and corrected the designation, which was then accepted by the trial court. Further, the findings and recommendations pertained only to the child support obligation. As specified, the CJFS-OCSS submitted its findings and recommendations as a result of the "investigation of the child support order" in the case. The CJFS-OCSS found the support obligation regarding the child should be terminated on the basis that the child, who had reached the age of 18, had graduated from high school.

{¶10} The CJFS-OCSS findings and recommendations also indicated that there was no arrearage and "that it is necessary to terminate the withholding or deductions, as there are no other children subject to the Court/Administrative order[.]" This determination was consistent with the terms of the divorce decree that specified spousal support would be paid "through CSEA as long as there is a child support obligation." There was no determination with regard to the spousal support obligation, which was not at issue.

{¶11} Further, the trial court's orders only accepted the findings and recommendations "as the revised Court child support order" and did nothing to terminate spousal support. The trial court recognized as much in its judgment entry.

{¶12} Finally, we recognize that a trial court retains authority to enforce the provisions of a divorce decree and to clarify ambiguities in a divorce decree. *Brooks v. Brooks*, 6th Dist. Fulton No. F-11-020, 2013-Ohio-405, ¶ 13. In this matter, the language of the divorce decree is not ambiguous with regard to the termination of spousal support. Although Ted argues that the divorce decree required spousal support payments

only "through CSEA as long as there is a child support obligation," the trial court aptly recognized that the decree provided that spousal support would be paid through the agency as long as there was a child support order in existence. This determination was consistent with other language in the divorce decree that offset the support obligations and instructed CSEA to collect and pay the difference "until [Paula's] obligation to pay child support shall cease."

{¶13} Accordingly, Ted's obligation to pay spousal support was not terminated by the August 14, 2014 order, no "mistake of fact" hearing or appeal by Paula was necessary, the trial court could proceed upon the motion to show cause, and the denial of his motion to dismiss did not result in an implied relief from judgment. Appellant's first, second, and third assignments of error are overruled.

{¶14} This leads to the fourth assignment of error, under which appellant claims the court erred in failing to terminate spousal support because of "cohabitation." We find merit to this argument.

{¶15} The divorce decree provides for the termination of spousal support "upon the death of either party or [Paula's] remarriage or cohabitation as defined by *Dickerson* [*v. Dickerson*, 87 Ohio App.3d 848, 623 N.E.2d 237 (6th Dist.1993)]." Likewise, under the terms of the separation agreement that were incorporated into the divorce decree, the parties agreed to be bound by the term "cohabitation" as defined by *Dickerson*.

{¶16} In *Dickerson*, the court recognized that "[w]hether or not a particular arrangement rises to that lifestyle known as 'cohabiting' is a factual question to be

initially determined by the trial court." *Id*. at 851. The court identified three "principal relevant considerations," which had been set forth in an earlier decision, *Birthelmer v. Birthelmer*, 6th Dist. Lucas No. L-83-046, 1983 Ohio App. LEXIS 11576 (July 15, 1983), for determining whether cohabitation exists, as follows:

> (1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses.

*Dickerson* at 850, fn. 2. In referencing *Birthelmer*, the *Dickerson* court indicated that "[w]e did not declare that there were no other considerations, nor did we indicate the relative weight to be placed upon the three enunciated circumstances." *Dickerson* at 850.

{¶17} At the March 30, 2015 hearing, Paula testified that she had been in a relationship with her boyfriend for four or five years; that she stays at her boyfriend's house four or five nights per week, during which time her boyfriend provides food; and that the two have frequent sexual relations. Paula's boyfriend cosigned for her vehicle, pays for their travel expenses, and provided her $20,000 over eight months for certain expenses, including car expenses, doctor fees, dentist fees, attorney fees, medication, and gifts for her children.

{¶18} Paula testified that she utilized her earned income as well as her spousal support to pay for her ordinary living expenses such as car insurance, medicine, a storage fee, a cell phone, food, gas, clothes, and other personal expenses. She further maintained that since Ted stopped paying her spousal support, she had to borrow money from her boyfriend and that the $20,000 was loaned to her. However, the funds were not subject to a loan or other type of repayment agreement. Paula claimed that she paid $100 a

month in rent for her separate residence, where she stays two to four nights per week; that she and her boyfriend do not share expenses related to each other's residences; they do not maintain a joint bank account; and that they do not hold themselves out as husband and wife.

{¶19} In the magistrate's decision of January 11, 2016, relating to the contempt proceedings, the magistrate recognized the divorce decree provided for the termination of spousal support upon cohabitation as defined in *Dickerson*, 87 Ohio App.3d 848, 623 N.E.2d 237. However, the magistrate never discussed the *Dickerson* factors. Rather, the magistrate found the defense of cohabitation to be "disingenuous" because Ted had continued to pay spousal support during much of the alleged period of cohabitation, he raised the issue only when accused of contempt, and he had never filed a motion to terminate the obligation.[1]

{¶20} In the judgment entry issued by the trial court, the court recognized that it was required to conduct its analysis of cohabitation pursuant to the definition selected by the parties, which was provided by *Dickerson*. The trial court set forth the three principal relevant considerations, and found that "pursuant to those parameters [Paula] is not cohabitating." However, in reaching its determination, the court only addressed the first consideration, and found as follows:

---

[1] The record reflects that a finding of cohabitation had been made by the court magistrate in an order dated March 21, 2011, in relation to awarding temporary spousal support during the pendency of the divorce proceedings.

A review of the transcript clearly shows that [Paula] and her boyfriend maintain separate residences. There is no "actual living together of a sustained duration," as required by the definition of cohabitation that the parties selected and specified in their divorce decree.

{¶21} Our review reflects a lack of competent, credible evidence in the record to support the trial court's determination regarding cohabitation. Rather, the record reflects that the lifestyle of Paula and her boyfriend amounted to cohabitation. The record shows that Paula was in a relationship with her boyfriend for several years and spent the majority of nights at his home. He provided food at his home, paid for their travel expenses, and provided her $20,000 over eight months to assist with her expenses. Paula's self-serving assertion that the money was a loan lacked supporting evidence. Further, her claim that she had no choice but to accept the funds to assist with her expenses is disingenuous in that the $20,000 provided far exceeded the spousal support amount to which she claims to have been entitled during that time. That Paula maintained her own residence for a rental fee of $100 per month and paid for certain ordinary expenses does not overcome the overwhelming evidence demonstrating cohabitation. Under the analysis required under *Dickerson,* the totality of the evidence presented reflects that Paula and her boyfriend were actually living together, for a sustained duration, and with shared expenses with respect to financing and day-to-day incidental expenses. The record does not support any other result.

{¶22} Under the facts and circumstances of this case, we conclude the trial court abused its discretion in finding Ted in contempt and failing to terminate his spousal

support obligation to Paula because of her cohabitation. Ted's fourth assignment of error is sustained.

**{¶23}** Judgment reversed and cause remanded. The trial court is instructed to vacate the contempt finding and terminate Ted's spousal support obligation, effective June 1, 2014.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR