[Cite as *Kemp v. Kemp*, 2021-Ohio-2419.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                         |   | JUDGES:                       |
|-------------------------|---|-------------------------------|
| ANGELA R. KEMP          | : | Hon. W Scott Gwin, P.J.       |
|                         | : | Hon. Patricia A. Delaney, J.  |
| Plaintiff-Appellee      | : | Hon. Earle E. Wise, J.        |
|                         | : |                               |
| -vs-                    | : |                               |
|                         | : | Case No. 20 CAF 11 0050       |
| ALLEN DALE KEMP         | : |                               |
|                         | : |                               |
| Defendant-Appellant     | : | O P I N I O N                 |

CHARACTER OF PROCEEDING:    Civil appeal from the Delaware County
                            Court of Common Pleas, Domestic
                            Relations Division, Case No. 16 DRA 08
                            0387

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     July 14, 2021

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

ANGELA R. KEMP PRO SE                   ROBERT C. HETTERSCHEIDT
2469 Parklawn Drive                     580 South High Street
Lewis Center, OH 43935                  Columbus, OH 43215

*Gwin, P.J.,*

{¶1} Appellant appeals the October 22, 2020 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division, denying his motion to terminate spousal support.

*Facts & Procedural History*

{¶2} In 2016, appellee Angela Kemp filed a complaint for divorce against her then husband, appellant Allen Kemp. Appellant and appellee share one adopted child, B.K. The trial court issued a final judgment entry on August 7, 2018. The trial court awarded appellee spousal support in the amount of $250.00 per month. The final judgment entry provides the spousal support, "shall terminate sooner than the above-stated date upon Plaintiff's or the Defendant's death or in the event of the following: the cohabitation of the person receiving support in a relationship comparable to marriage."

{¶3} Appellant filed a motion to terminate spousal support on April 29, 2019. The trial court denied the motion on January 3, 2020.

{¶4} Appellant filed a second motion to terminate spousal support on April 13, 2020, arguing that spousal support should be terminated because appellee is residing with Kenneth Chick ("Chick") at his residence in a relationship comparable to marriage.

{¶5} The trial court held a hearing on appellant's motion on September 2, 2020.

{¶6} Appellee testified that she broke her ankle on February 9 and is still recovering from surgery she had in March. Appellee testified that she currently resides at 2469 Parklawn, the former marital home, but she stayed at her son's and her boyfriend's homes while she was recovering from surgery. Appellee stated she has spent approximately fifty percent of her time at Chick's home during the past three months

because of her ankle surgery. Appellee stated she needed constant assistance because she fell three times and had a blood clot.

{¶7} When counsel for appellant inquired about the post office holding mail for appellee, she stated she has requested her mail be held at various times during the past two years because appellant has gone into her mailbox at the Parklawn address and taken items out of it. Appellee did not know why certified mail sent to the Parklawn address was returned as unclaimed/vacant. Appellant stated he sent mail to Chick's address for appellee and it has not been returned.

{¶8} Appellee testified that she has been paying her bills for the past few months, and her boyfriend has not contributed to her support. Appellee pays her bills from the money she receives for spousal support and child support. Appellee stated that, despite her surgery and ankle injury, she pays her own bills, including the bills for the Parklawn property. While she is at Chick's house, Chick pays his own bills. Appellee provides food for herself and her daughter out of the child support money.

{¶9} After counsel for appellant inquired of appellee, the court asked appellee several questions. The court asked if the utilities were still on at the Parklawn property and whether the bills were up-to-date. Appellee testified the gas, electric, water, and sewer at the Parklawn property are all still on and working. Appellee is on payment plans for the electric, gas, and water bills. She is approximately one month behind on each bill. After the court inquired of appellee, the trial judge asked counsel for appellant if he had any further questions. Counsel responded, "no, your honor."

{¶10} Tina Adams ("Adams") is appellant's older daughter. Adams placed an app on B.K.'s phone so that Adams could see where B.K. was at all times. Appellant asked

Adams to track B.K. for approximately two or three months.  Adams would track B.K. during the day, and would also set an alarm to wake her up every morning at 2:00 or 3:00 a.m. to check her location.  In the months that Adams "pinged" B.K.'s location, she was at Chick's home.

{¶11}  On cross-examination, Adams stated she no longer has the app to locate B.K. on her phone.  She took it off her phone after "we had a good three months' worth" of "pings."  Adams had "pings" from the end of April, all of May, and all of June.

{¶12}  Appellant testified that he drives past the Parklawn house every three or four weeks to see if the yard is being taken care of.  He has never seen any notices on the door for unpaid utilities.  He has driven by the Parklawn property and seen no one, but has driven by and has seen appellee, B.K., and appellee's grandchildren.

{¶13}  The trial court issued a judgment entry on October 22, 2020.  The trial court found as follows:  the property at Parklawn used by appellee as her residence address is in the foreclosure process, but there has been no notice of eviction at the time of the hearing; appellant testified he has attempted to send mail and a process server to the Parklawn address and mail has been returned as vacant, unable to forward, and the process server has been unable to serve the address; appellant testified he sent mail to appellee at the Red Bank Road address and it has not been returned; appellant testified he has driven past the Parklawn property and saw no one but has driven by and seen appellee, B.K., and appellee's grandchildren at the property; appellant's adult daughter put a phone app on the parties' minor child's phone to track her location, and during a two-month period of time, including the early morning hours, she did not get any pings at the Parklawn property and did locate her at the Red Bank property; appellee testified she

has been at the Red Bank Road property because she needed help due to breaking her ankle; appellee testified she spends fifty percent of her time at the Red Bank Road address, but she does not contribute to paying any bills at this address and she pays the bills at the Parklawn address when she can pay them; and appellee testified that all utilities at the Parklawn property are on and she still lives there.

{¶14} The trial court denied appellant's motion, specifically noting no evidence was presented that appellee shares any day-to-day incidental expenses, or any expenses, with her boyfriend at the Red Bank Road property.

{¶15} Appellant appeals the October 22, 2020 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶16} "I. THE TRIAL COURT ERRED WHEN IT OVERRULED THE APPELLANT'S MOTION TO TERMINATE SPOUSAL SUPPORT."

{¶17} Appellant argues the trial court abused its discretion in denying appellant's motion to terminate spousal support.

{¶18} A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard. *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981). We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 541 N.E.2d 597 (1989). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶19} Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson*, 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). A trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

{¶20} We have previously stated that "whether or not a particular living arrangement rises to the level" of cohabitation is a factual question to be initially determined by the trial court. *Yarnell v. Yarnell*, 5th Dist. Delaware No. 05CAF0064, 2006-Ohio-3929. A finding as to cohabitation that is supported by some competent and credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶21} As the moving party seeking to terminate spousal support, appellant has the burden of establishing cohabitation. *Dickerson v. Dickerson*, 87 Ohio App.3d 848, 623 N.E.2d 237 (6th Dist. Lucas 1993); *Thurston v. Thurston*, 10th Dist. Franklin No. 99AP-741, 2000 WL 423987.

{¶22} In determining whether cohabitation exists, we note the holding in *Moell v. Moell*, 98 Ohio App.3d 748, 649 N.E.2d 880 (6th Dist. 1994):

> Many factors may be considered in deciding whether cohabitation exists in a particular set of facts. We previously addressed the issue of cohabitation in *Dickerson v. Dickerson, supra*. In that case, we noted that 'cohabitation' describes an issue of lifestyle, not a housing arrangement. 87 Ohio App.3d at 850, 623 N.E.2d at 239. Further, when considering the evidence, the trial court should look to three principal factors. These factors are: '(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses.' *Id.* at fn. 2, citing *Brithelmer v. Birthelmer* (July 15, 1983), Lucas App. No. L83-046, 1983 WL 6869.

{¶23} However, this Court has cautioned against a strict application of the *Moell* test and found that "the overarching principle in such cases is that cohabitation contemplates a relationship that approximates, or is the functional equivalent of, a marriage." *Sage v. Gallagher*, 5th Dist. Richland No. 13 CA 64, 2014-Ohio-1598.

{¶24} Appellant specifically contends that while the trial court utilized the correct legal test to determine cohabitation, the trial court wrongly applied the facts to the test in this case. We disagree and find there was competent and credible evidence to support the trial court's decision.

{¶25} Appellee testified she currently resides at the Parklawn address, and the reason she was staying at Chick's and her son's house approximately fifty percent of the time was because she was recovering from ankle surgery, as she had fallen, had a blood

clot, and otherwise needed constant assistance during her recovery.  Appellee stated she has been paying her bills and Chick has not contributed to her support.  Appellee testified Chick pays all his own bills, and she pays for food for her and her daughter while they are at his house from child support funds.  Appellee testified the gas, electric, water, and sewer at the Parklawn property are on and working, and she is on a payment plan for most of the utilities.  Appellant stated that he drove past the Parklawn house every three or four weeks and has never seen any notices on the door for unpaid utilities.

{¶26}  Adams testified about "pings" on B.K.'s phone for a period of approximately two months. Her testimony focused only on these "pings," and she offered no evidence as to any sharing of expenses or other evidence about whether appellee's relationship with Chick was the functional equivalent of a marriage.  Appellant has driven by the Parklawn property and sometimes sees no one, but has driven by and seen appellee, B.K, and appellee's grandchildren.

{¶27}  Appellee has presented unrebutted testimony that she and Chick are not sharing expenses with regard to financing and day-to-day incidental expenses; and unrebutted testimony that she is paying the utilities at the Parklawn property such that she and Chick each take care of the expenses and utilities for each of their respective residences.  At most, appellant provided evidence that appellee lived with Chick for fewer than three months, arguably not a sustained duration of time.  *See Hartman v. Hartman*, 9th Dist. Summit No. 22303, 2005-Ohio-4663.  Under these circumstances, there was sufficient evidence to allow the trier of fact to conclude appellee was not cohabitating with Chick in a marital-type relationship.  As detailed above, the trial court, as the trier of fact, is in the best position to assess the credibility of the witnesses.

{¶28} Appellant contends the trial court's questioning impermissibly assisted appellee in proving her case with questions about appellee's expenses at the Parklawn home. However, as noted above, the burden of proof in a motion to modify or terminate spousal support is on the movant; appellee did not have the burden to prove any of the factors listed above.

{¶29} Evidence Rule 614(B) specifically provides that the trial court may interrogate witnesses in an impartial manner. Because Evidence Rule 614(B) permits the trial court discretion to decide whether or not to question a witness, appellate courts must review the trial court's questioning under an abuse of discretion standard. *Brothers v. Morrone-O'Keefe Dev. Co. LLC,* 10th Dist. Franklin No. 05AP-161, 2006-Ohio-1160. Further, a trial court enjoys even greater freedom in questioning witnesses during a bench trial, because the court cannot prejudicially influence a jury with its questions or demeanor. *Id.*

{¶30} Upon our review of the record, we find the lower court questioned appellee in a fair and impartial manner and we find no evidence of bias, prejudice, or prodding on the part of the trial court. At the point in the hearing when the trial court questioned appellee, appellee had already testified that she and Chick were not sharing expenses, Chick did not contribute to her financial support, and she was paying the bills for the Parklawn property. The questions asked by the trial court merely asked for more specific details on the bills regarding the Parklawn property.

{¶31} Additionally, after the trial court inquired of appellee, she gave counsel for appellant an opportunity to ask any further questions; he declined to do so.

{¶32}  We find the trial court did not abuse its discretion in in denying appellant's motion to terminate spousal support.  Accordingly, appellant's assignment of error is overruled.

{¶33}  The October 22, 2020 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed.

By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur